IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JERRY LANIER**,<br><br>  Plaintiff,<br><br>vs.<br><br>**CORECIVIC, INC.; CORECIVIC OF TENNESSEE, LLC; DAMON T. HININGER; PATRICK SWINDLE; JASON MEDLIN; HILTON HALL, JR.; JERRY WARDLOW; JOSHUA CARTER; JOSHUA MORTON; KEITH IVENS; and ELAINA RODELA, M.D.**<br><br>  Defendants | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## POST-SEVERANCE COMPLAINT OF JERRY LANIER

NOW COMES Jerry Lanier, the Plaintiff herein, stating and alleging as follows:

### Jurisdiction

1. This Court has jurisdiction under 28 U.S.C. § 1331 because the Plaintiff asserts federal claims under 42 U.S.C. § 1983.

2. Venue is proper in this Court because some of the Defendants reside or are located in the Middle District of Tennessee, and some of the acts giving rise to this lawsuit occurred in the Middle District of Tennessee.

### Parties

3. CoreCivic, Inc. is a private prison company that is headquartered in Nashville, Tennessee.

4. CoreCivic of Tennessee, LLC is a wholly-owned subsidiary of CoreCivic, Inc., and it operates all of the CoreCivic facilities in Tennessee. Those facilities include Hardeman County

- 1 -

Correctional Facility ("HCCF"). CoreCivic, Inc. and CoreCivic of Tennessee, LLC are hereinafter referred to jointly as "CoreCivic" or "Defendant CoreCivic."

5. Damon Hininger is the chief executive officer of Defendant CoreCivic, Inc.

6. Patrick Swindle is the chief operating officer of Defendant CoreCivic, Inc.

7. Jason Medlin is the vice president of facility operations at Defendant CoreCivic, Inc.

8. Hilton Hall, Jr. was the warden of Hardeman County Correctional Factility ("HCCF") in the months before and after June 11, 2022.

9. Jerry Wardlow was named the Warden of HCCF in February of 2023.

10. Captain Joshua Carter is a supervisor at HCCF.

11. Captain Joshua Morton is a supervisor at HCCF.

12. Keith Ivens, M.D. is the medical director for CoreCivic.

13. Elaina Rodela, M.D. is the physician assigned to HCCF and she was responsible for overseeing Mr. Lanier's care.

## Facts

**The assault on Jerry Lanier**

14. Jerry Lanier was convicted of a non-violent drug offense in 2009 and is currently serving his sentence in Hardeman County Correctional Facility ("HCCF"). He has never been affiliated with any gang, and he had no history of altercations until he was violently assaulted by a white nationalist gang member on June 11, 2022. Mr. Lanier is black.

15. On or about October 24, 2017, Mr. Lanier witnessed a violent and unprovoked assault on a white inmate by a black gang member. The white inmate later died from the assault. Despite the obvious danger to himself, Mr. Lanier fully cooperated with the internal and law enforcement

investigation of the murder. CoreCivic's own internal investigator recommended that Mr. Lanier be transferred to another facility for his safety, but he was never transferred from HCCF.

16. On June 11, 2022, Mr. Lanier was seated at table in a general population area and drinking coffee when Inmate Samuel McMahan approached him from behind and started beating him in the head with a metal pipe. The initial blow nearly knocked Mr. Lanier unconscious, but he quickly turned around and fought back with his fists. No guards were present.

17. Mr. Lanier took the pipe away from McMahan and struck him until he fell to the floor. Mr. Lanier tried to keep McMahan on the floor, hoping that guards would soon arrive, but McMahan kept trying to get back up. Whenever McMahan tried to get back on his feet, Mr. Lanier struck him again. It took guards more than eight minutes to observe the altercation and then show up on the scene. By the time the guards arrived, Mr. Lanier had sustained serious injuries to his head and his hand (he had used his hand to fend off blows from the pipe). To this day, it appears that a bone in Mr. Lanier's hand was broken, yet never treated.

18. Captain Joshua Morton was the supervisor on duty on June 11, 2022, and he and Defendant Hall failed to ensure that HCCF was sufficiently staffed with correctional officers on that day.

19. After the assault, Mr. Lanier was sent to a nurse, who put a liquid bandage on his bleeding head and antibiotic ointment on his hand. Mr. Lanier told the nurse that his head and back were hurting, his vision was blurred, and his perception of sound was altered as if he was underwater. The nurse did not refer Mr. Lanier to a physician or nurse practitioner, nor did she perform a neurological exam or seek X-rays for the broken hand.

20. Mr. Lanier was finally seen by a nurse practitioner on July 5, 2022, but she did not refer him to a physician, she did not perform any neurological exam, and she did not X-ray any of his injuries. Defendant Rodela was responsible for overseeing Mr. Lanier's care, but she was

- 3 -

Case 3:24-cv-00288   Document 1   Filed 03/11/24   Page 3 of 17 PageID #: 3

deliberately indifferent to the seriousness of his injuries and she made no effort to treat his injuries or refer him to another facility.

21. Initially, Mr. Lanier was not charged with any disciplinary violations. Six days after the assault, however, Captain Joshua Carter charged Mr. Lanier with assault with a weapon, and he sent Mr. Lanier to "close supervision," a form of segregation. Captain Carter was punishing Mr. Lanier in order to divert attention from the fact that HCCF failed to have sufficient guard staff on duty at the time of the June 11, 2022 attack.

22. At the time of the assault, Mr. Lanier was eligible for parole and likely to be released within a few months due to his long history of good behavior. By filing charges against Mr. Lanier, however, Captain Carter eliminated Mr. Lanier's opportunity for parole and ensured that the State of Tennessee would keep paying CoreCivic to incarcerate Mr. Lanier.

23. On June 12, 2022, an inmate who worked as a trustee in maintenance provided Mr. Lanier with a written statement indicating that before the assault, he had warned several CoreCivic supervisors that other inmates were cutting pipes out of and off of walls. One of those pipes was used to assault Mr. Lanier. To this day, the external piping remains accessible to inmates and can readily be converted into weapons.

24. Twelve inmate witnesses signed written statements indicating that Mr. Lanier acted in self-defense on June 11, 2022. One of those was none other than Samuel McMahan, the inmate who attacked Mr. Lanier. He wrote as follows:

> my name is Samuel McMahon
> I was wacked out my mind and
> The voices were Telling me To hurt
> Jerry Lanier and I'm at fault for
> what occurred on June 11 2022
>
> Thanks
> Samuel McMahon
> #365041

Notwithstanding the uncontroverted evidence that Mr. Lanier acted in self-defense, Mr. Lanier's grievances were denied in sham disciplinary proceedings. Defendants Wardlow and Hall kept Mr. Lanier administratively segregated from other inmates as if he was violent and dangerous. Defendant Wardlow and Hall retaliated against Mr. Lanier and denied him due process because he filed grievances about the unlawful conditions at HCCF and because he retained counsel who complained about the unlawful conditions at HCCF. They also denied Mr. Lanier an opportunity to make parole.

25. Because of correspondence from the undersigned to outside counsel for CoreCivic, Defendant Ivens, Defendant Rodela and senior CoreCivic personnel learned in late June of 2022 that Mr. Lanier's injuries had not been treated. The undersigned followed up with an additional email on August 3, 2022 regarding the untreated injuries. On August 3, 2022, Mr. Lanier's sister also notified Defendants Laughlin and Medlin that Mr. Lanier's injuries had not been treated. None of the foregoing Defendants took steps to get adequate medical treatment for Mr. Lanier.

26. On November 28, 2022, Mr. Lanier filed a grievance requesting transfer to a prison other than HCCF. The officials at HCCF did not acknowledge receipt of the grievance, so the undersigned sent the following email to Cole Carter, general counsel for CoreCivic, on December 13, 2022:

> *Mr. Carter,*
>
> *I have been retained to represent Mr. Lanier, and I write to you in your capacity as legal representative for CoreCivic of Tennessee and CoreCivic, Inc. I met with Mr. Lanier at HCCF this afternoon, and he provided me with the attached request form dated November 28, 2022. Mr. Lanier said HCCF staff have not acknowledged receipt of the form.*
>
> *I was able to observe Mr. Lanier's untreated injuries that resulted from a 6/11/22 assault at HCCF. The inmate who assaulted Mr. Lanier (and attempted to kill him) was gang-affiliated, whereas Mr. Lanier is not and was not. Incidentally, Mr. Lanier served as a witness in one of my earlier cases that arose from the beating death of an inmate at HCCF. The killer was a high-ranking gang member, yet Mr. Lanier was left at HCCF.*
>
> *Mr. Lanier is not safe at HCCF and, as I understand it, CoreCivic facilities are not supposed to be housing close-supervision inmates anyway. I ask that he be transferred out of HCCF immediately. If you are unable to assist with this matter, please tell me whom I should contact. Thank you.*
>
> *Ty Clevenger*

Mr. Carter did not respond, but outside counsel indicated that he would be representing CoreCivic in the matter.

27. On January 24, 2023, the undersigned notified CoreCivic's outside counsel via email that Mr. Lanier had coughed up blood and continued to suffer from headaches.

28. On February 1, 2023, the undersigned notified CoreCivic's outside counsel via email that the bump on Mr. Lanier's head had grown larger.

29. On April 21, 2023, the undersigned notified CoreCivic's outside counsel via email that Mr. Lanier still had not been treated and his injuries had grown worse.

30. When this lawsuit was filed, most of Mr. Lanier's injuries still had not been treated. Defendant Rodela was personally responsible for overseeing Mr. Lanier's treatment, and she was deliberately indifferent to his medical needs. Likewise, Defendant Ivens was aware of the untreated injuries, but he was deliberately indifferent. Furthermore, HCCF lacks the medical personnel and equipment necessary to treat Mr. Lanier's injuries. Only the Tennessee Department of Correction's Louis M. DeBerry Special Needs Facility is capable of providing the care that Mr. Lanier needs, and Mr. Lanier should have been transferred to that facility within days of the June 11, 2022 assault. Instead, Mr. Lanier was recently transferred to another CoreCivic facility that lacks the capabilities to treat his injuries.

**A long history of deliberate indifference**

31. CoreCivic is infamous for putting profits ahead of the safety and well-being of inmates. As a result of chronic and deliberate understaffing, for example, inmates are four times as likely to be murdered in a facility operated by CoreCivic than a facility operated by the State of Tennessee. *See* James Satterfield, "Private prison contractor CoreCivic hit with two new lawsuits over inmate deaths," *Tennessee Lookout* (September 21, 2022) (https://tennesseelookout.com/2022/09/21/private-prison-contractor-corecivic-hit-with-two-new-lawsuits-over-inmate-deaths/)

> A performance audit by the Tennessee Comptroller's Office in 2020 of CoreCivic facilities in the state found myriad problems, including the failure to properly document inmate deaths and violence and identify the causes and adequately staff its prisons.
>
> A chart compiled as part of the audit revealed CoreCivic facilities in Tennessee logged more than double the number of "life-threatening matters and breaches of security," including deaths, assaults, rapes, escapes and lockdowns, reported at TDOC facilities from 2017 to 2019.
>
> An audit by the U.S. Department of Justice Office of the Inspector General in 2016 detailed widespread staffing deficiencies, inadequate medical care and unchecked violence at CoreCivic facilities across the country. The company's own

shareholders sued the firm that same year for misrepresenting staffing levels <u>and quality of medical care provided to inmates</u>.

*Id*. (emphasis added). During two separate audit periods, Whiteville Correctional Facility was missing one-third of its medical and mental health staff.

32. CoreCivic has paid millions in settlements around the United States because (1) it routinely understaffed its correctional facilities, inevitably resulting in anarchy, assault, murder, and suicide; and (2) it routinely failed to provide adequate medical and mental health care to inmates. Notwithstanding those settlements, CoreCivic continues to understaff its facilities and provide inadequate medical care because it is more profitable to pay the settlements than to increase guard and medical staffing. The understaffing is particularly problematic because criminal gangs are practically running CoreCivic's facilities, including HCCF, namely because there are not enough guards to control the population. Making matters worse, some guards are affiliated with the same gangs as some of the inmates.

33. In 2016, CoreCivic and its directors were sued by company shareholders because, among other things, the company misrepresented its pattern of understaffing and poor medical care, which ultimately led the Federal Bureau of Prisons to cancel its business relationship with Core Civic. In April of 2021, CoreCivic settled the case for $56 million. Notwithstanding that settlement and numerous other warnings, CoreCivic continued to provide inadequate staffing, supervision and medical care at its facilities, including SCCC.

34. Under the leadership of Defendant Heninger, CoreCivic has an established history of putting profits ahead of the health and safety of inmates. According to a 2011 lawsuit filed by the American Civil Liberties Union, for example, inmates referred to CoreCivic's Idaho Correctional Center as "Gladiator School" because the understaffing led to such a violent atmosphere at the prison. CoreCivic settled the lawsuit with the ACLU, agreeing to provide minimum staff levels,

- 8 -

but the company was held in contempt of court in 2013 because it violated the agreement and falsified records to misrepresent the number of guards on duty. In 2014, the FBI opened an investigation of the company based on its billing for "ghost employees," Idaho Governor Butch Otter ordered state officials to take control of the prison, and the company paid the state $1 million for understaffing the prison.

35. On or about February 23, 2017, a federal jury found that CoreCivic had violated inmates' Eighth Amendments rights to be free from cruel and unusual punishment by being deliberately indifferent to the serious risk posed by the company's long-standing practice of understaffing the Idaho Correctional Center. The jury did not award damages, however, because it found that the inmates' particular injuries were caused by other factors.

36. At an Oklahoma prison operated by CoreCivic, ten prisoners were involved in a fight on February 25, 2015 that left five with stab wounds. The following month, eight more were involved in another stabbing incident. In June of that year, thirty-three gang members fought with weapons and eleven prisoners were sent to a hospital. On September 12, 2015, four inmates were killed during a riot at the same facility. Inmates alleged that gangs were effectively allowed to run the prison. According to an investigation by the Oklahoma Department of Corrections, video evidence of the September 12, 2015 incident from three cameras at the facility was recorded over or deleted by CoreCivic employees. Two guards were later indicted for bringing drugs and other contraband into the prison, including one of the guards accused of failing to act during the riot. Between 2012 and 2016, one-third of all homicides in Oklahoma prisons occurred at two CoreCivic facilities, though they held just over 10 percent of the state's prison population.

37. In August of 2016, the Office of the Inspector General ("OIG") of the U.S. Department of Justice found widespread deficiencies in staffing and medical care at facilities operated for the

- 9 -

Case 3:24-cv-00288    Document 1    Filed 03/11/24    Page 9 of 17 PageID #: 9

federal Bureau of Prisons by private contractors, including those operated by CoreCivic. As a result, the Department of Justice indicated that it would phase out its relationships with private prisons. That, in turn, led to the shareholder lawsuit described above. In a separate report released on April 25, 2017, OIG found widespread understaffing at a detention facility in Leavenworth, Kansas operated by CoreCivic for the U.S. Marshals Service, with vacancy levels reaching as high as 23 percent between 2014 and 2015. Earlier, the company tried to hide the fact that it was packing three inmates into two-inmate cells at Leavenworth, contrary to prison regulations. The following excerpt appears in the April 25, 2017 OIG report:

> In 2011, without the knowledge of the [U.S. Marshals Service], the [Leavenworth Detention Center or "LDC"] took steps to conceal its practice of triple bunking detainees. LDC staff uninstalled the third beds bolted to the floor of several cells designed for two detainees and removed the beds from the facility in advance of a 2011 American Correctional Association (ACA) accreditation audit. A subsequent CoreCivic internal investigation revealed that this may have also occurred during other ACA audits of the LDC.

The Plaintiff restates the foregoing allegations as his own.

38. In May of 2012, a riot at a federal prison operated by CoreCivic in Natchez, Mississippi resulted in the death of a guard and injuries to approximately 20 inmates and prison staff. OIG investigated and alleged the following in a report released in December of 2016:

> The riot, according to a Federal Bureau of Investigation (FBI) affidavit, was a consequence of what inmates perceived to be inadequate medical care, substandard food, and disrespectful staff members. A BOP after-action report found deficiencies in staffing levels, staff experience, communication between staff and inmates, and CoreCivic's intelligence systems. The report specifically cited the lack of Spanish-speaking staff and staff inexperience.

> Four years after the riot, we were deeply concerned to find that the facility was plagued by the same significant deficiencies in correctional and health services and Spanish-speaking staffing. In 19 of the 38 months following the riot, we found CoreCivic staffed correctional services at an even lower level than at the time of the riot in terms of actual post coverage. Yet CoreCivic's monthly reports to the BOP, which were based on simple headcounts, showed that correctional staffing levels had improved in 36 of those 38 months.

The report specifically found that medical staffing was still inadequate four years after the riot. "DOJ OIG Releases Report on BOP Contract with CoreCivic to Operate the Adams County Correctional Center, Natchez, Mississippi," December 20, 2016, U.S. Department of Justice, Office of the Inspector General, https://oig.justice.gov/news/doj-oig-releases-report-bop-contract-corecivic-operate-adams-county-correctional-center, and "Audit of the Federal Bureau of Prisons'Contract with CoreCivic, Inc. to Operate the Adams County Correctional Center in Natchez, Mississippi," https://www.oversight.gov/sites/default/files/oig-reports/a1708.pdf. The Plaintiff adopts the report's allegations as his own.

39. A state audit released in 2017 found that WCF needed 79 officers to cover 17 positions during a shift, but on average the facility provided only 57 officers per shift. The same audit found systemic problems at HCCC, including understaffing and gang violence. The audit further noted that information provided by CoreCivic concerning HCCC was so incomplete that it was not possible to determine the accuracy of staffing levels. The Plaintiff alleges that CoreCivic deliberately provided incomplete information in order to disguise the fact that it was understaffing both facilities. Six years later, both facilities remain understaffed.

40. On December 12, 2017, a former guard at Trousdale-Turner testified before a legislative committee that she resigned from the company in September after witnessing two inmates die from medical neglect during the seven months that she worked for the company. Ashley Dixon told lawmakers that in one instance she pleaded with her superiors for three days to help a dying inmate, but to no avail, and her subsequent complaints were ignored by company officials.

41. Defendant CoreCivic's indifference toward inmates' medical needs was widely known inside and outside of the company based on widespread media reports of inadequate medical care at the company's facilities. See, e.g., "Mexican man's widow sues over Otay Mesa jail death, says

pleas for help ignored," March 23, 2017 *The San Diego Union-Tribune*, https://www.sandiegouniontribune.com/news/courts/sd-me-detention-lawsuit-20170323-story.html; "Lawsuit: CoreCivic Staff Ignored Scabies Infection For A Full Year," July 31, 2017 *NewsChannel5 Nashville*, https://www.newschannel5.com/news/lawsuit-corecivic-staff-ignored-scabies-infection-for-a-full-year; "Man's death hints at wretched medical care in private immigration prisons," November 1, 2016 *The Guardian*, https://www.theguardian.com/us-news/2016/nov/01/jose-jaramillo-private-immigration-prisons-medical-care; A March 10, 2017 report specifically noted that immigrant detainees were placed in the isolation unit rather than the medical unit. *See* "ICE detainees are asking to be put in solitary confinement for their own safety," March 10, 2017 *The Verge*, https://www.theverge.com/2017/3/10/14873244/ice-immigrant-detention-solitary-trump-corecivic-geo. And as of 2018, CoreCivic was facing multiple lawsuits due to inadequate medical care at TTCC. *See* "At Tennessee's largest prison, diabetic inmates say they are denied insulin to 'maximize profits'," August 7, 2018 *The Tennessean*, https://www.tennessean.com/story/news/2018/08/07/corecivic-diabetic-inmates-denied-insulin-trousdale-turner/925297002/.

42. The sheer volume of lawsuits and media stories are such that every Defendant was fully aware of the harm caused by CoreCivic's practice of cutting corners in order to increase profits.[1]

---

[1] *See* Demetria Kalodimos, "Woman says she paid off gangs to keep son safe in prison," WSMV (Oct. 5, 2017), (https://www.wsmv.com/news/woman-says-she-paid-off-gangs-to-keep-son-safe-inprison/article_a4e670ea-78be-5087-86e5-a65ecd485475.html); Joseph Wenzel, "Over 1,200 staff, inmates test positive for COVID-19 at Trousdale Turner Correctional Center," WSMV (May 1, 2020), (https://www.wsmv.com/news/over-1-200-staff-inmates-test-positive-for-covid-19-at-trousdale-turnercorrectional-center/article_568c03d2-8bde-11ea-a447-4b7eaabeb67b.html); Adam Tamburin, "Tennessee prison inmate dies after fight at Trousdale Turner," *The Tennessean* (Jan. 26, 2020), (https://www.tennessean.com/story/news/2020/01/26/tennessee-prison-inmate-dies-after-fighttrousdale-turner-correctional-center/4581013002/); Dave Boucher, "New Tennessee CCA prison stops taking inmates amid 'serious issues,'" *The Tennessean*, (May 24, 2016), (https://www.tennessean.com/story/news/politics/2016/05/24/new-tennessee-private-

prison-stopstaking-inmates/84867834/); Chris Conte, "Prisons for profit: Concerns mount about Trousdale Turner Correctional Center, operator CoreCivic," WTVF (Jun. 13, 2019), (https://www.newschannel5.com/longform/prisons-for-profit-concerns-mount-about-trousdale-turnercorrectional-center-operator-corecivic); Staff Report, "Scathing state audit slams Tennessee prisons, CoreCivic for staffing, sexual assaults, and deaths in jails," WTVF (Jan. 10, 2020), (https://www.newschannel5.com/news/scathing-state-audit-slams-tennessee-prisons-corecivic-forstaffing-sexual-assaults-and-deaths-in-jails); Jamie McGee, "CoreCivic shareholders granted class action status in fraud lawsuit," *The Tennessean* (May 27, 2019), (https://www.tennessean.com/story/money/2019/03/27/corecivic-class-action-securities-fraudlawsuit/3289913002/); Chris Gregory, "Family seeks answers in loved one's death at Trousdale prison," *Lebanon Democrat* (Jan. 2, 2021), (https://www.lebanondemocrat.com/hartsville/family-seeks-answersin-loved-ones-death-at-trousdale-prison/article_1ffe90f7-0e9f-5021-bb94-9ec1b4d23139.html); Demetria Kalodimos, "Inmates at CoreCivic prisons say they sometimes go months without medical care," WSMV (Jun. 22, 2017), (https://www.wsmv.com/news/inmates-at-corecivic-prisons-say-they-sometimes-gomonths-without-medical-care/article_8d28e630-bd12-5f1c-8b68-92b9336553e1.html); Prison Legal News, "Incorrect Cause of Tennessee Prisoner's Death Reported by CoreCivic Employees," PLN (Jun. 7, 2018), (https://www.prisonlegalnews.org/news/2018/jun/7/incorrect-cause-tennessee-prisoners-deathreported-corecivic-employees/); Staff Report, Private prison company CoreCivic's history of problems in Tennessee, *The Tennessean* (Jan. 16, 2020), (https://www.tennessean.com/story/news/local/2020/01/17/private-prison-corecivic-history-problemstennessee/4470277002/); Stephen Elliott, "State audit criticizes CoreCivic facilities," *The Nashville Post* (Nov. 14, 2017) (https://www.nashvillepost.com/business/prison-management/article/20982796/stateaudit-criticizes-corecivic-facilities); Matt Blois, "CoreCivic reports $25M in profits as COVID infects 2,500+ inmates," *The Nashville Post* (Jun. 30, 2020), (https://www.nashvillepost.com/business/prisonmanagement/article/21138792/corecivic-reports-25m-in-profits-as-covid-infects-2500-inmates); Steven Hale, Problems Persist at Tennessee's Mismanaged Prisons, The Nashville Scene (Jan. 22, 2020) (https://www.nashvillescene.com/news/features/article/21111586/problems-persist-at-tennesseesmismanaged-prisons); Dave Boucher, "CoreCivic investigating ex-officer's allegations of negligent deaths at private prison," *The Tennessean* (Dec. 12, 2017) (https://www.tennessean.com/story/news/2017/12/12/corecivic-investigating-ex-officers-allegationsnegligent-deaths-private-prison/946196001/); Elizabeth Weill-Greenberg, 'Just Let Him Kick,' *The Appeal* (Sep. 6, 2018) (https://theappeal.org/just-let-him-kick/); Brinley Hineman, "Murfreesboro man charged in prison cellmate's death at Trousdale," *Daily News Journal* (Feb. 20, 2020), https://www.dnj.com/story/news/2020/02/20/murfreesboro-man-jacob-kado-charged-death-prisoncell-mate-ernest-hill-trousdale-turner/4818354002/); *Ethan Illers*, "Man killed during inmate-on-inmate altercation at Trousdale Turner prison," WSMV (Jun. 16, 2019) (https://www.wsmv.com/news/mankilled-during-inmate-on-inmate-altercation-at-trousdale-turner-prison/article_8d8b6806-9066-11e9-b749-7b44cac1c002.html); Jeremy Finley, "Recorded conversations reveal life inside prison ravaged by COVID-19," WSMV (May 6, 2020) (https://www.wsmv.com/news/investigations/recorded-conversationsreveal-life-inside-prison-ravaged-by-covid-19/article_91ef5b06-8fe2-11ea-9b75-f36db06e1ab1.html); Demetria Kalodimos, "Gang activity, security a concern at Trousdale Turner facility, WSMV (Jun. 21, 2017), (https://www.wsmv.com/news/gang-activity-security-a-concern-at-trousdale-turner-

This includes the corporate Defendants (and all of their directors) as well as Defendants Hininger, Swindle, Medlin, Ivens, and Rodela.

43. CoreCivic has an established pattern and practice of providing inadequate medical care at its facilities. That point was demonstrated in *Grae v. Corrections Corporation of America*

---

facility/article_df82a358-7073-552e-b5e4-9feb2e9cf8bc.html); Steven Hale, *Tennessee's Largest Prison Still Appears as Troubled as Ever*, The Nashville Scene (Feb. 13, 2019), (https://www.nashvillescene.com/news/features/article/21047078/tennessees-largest-prison-stillappears-as-troubled-as-ever); Jessie Williams, "Trousdale Turner Corrections Officer Arrested," *Macon County Chronicle* (Feb. 5, 2019) (https://www.maconcountychronicle.com/news/5680trousdaleturner-corrections-officer-arrested); Natalie Allison, "*Lawmakers hear from prison rape survivor, parents of man who hanged himself in CoreCivic facility*," The Tennessean (Dec. 19, 2018) (https://www.tennessean.com/story/news/politics/2018/12/19/tennessee-legislators-hear-rape-suicidecorecivic-prison/2355556002/); Dave Boucher, "*Private prison chief: 'We've got work to do' at Trousdale facility*," The Tennessean (Dec. 13, 2016) (https://www.tennessean.com/story/news/2016/12/13/privateprison-chief-weve-got-work-do-trousdale-facility/95223230/); Demetria Kalodimos, Former chaplain describes conditions inside TN prison, WSMV (Jun. 19, 2017), https://www.wsmv.com/news/formerchaplain-describes-conditions-inside-tn-prison/article_9b30af82-8297-5101-b11f-b5fd9270bf18.html); Chris Gregory, "Trousdale Turner employee charged with smuggling contraband," *Lebanon Democrat* (Apr. 23, 2020), (https://www.lebanondemocrat.com/hartsville/trousdale-turner-employee-charged-withsmuggling-contraband/article_6b865daf-fbc8-5a59-9a35-e84b61ace2e4.html); Andy Cordan, Prison corrections officer in Trousdale County arrested carrying drugs, WKRN (Jan. 20, 2021) (https://www.wkrn.com/news/prison-corrections-officer-in-trousdale-county-arrested-carrying-drugs/); Dave Boucher, "Gangs, insufficient staffing plague troubled Tennessee private prison, state audit finds," *The Tennessean* (Nov. 14, 2017), (https://www.tennessean.com/story/news/politics/2017/11/14/tennessee-private-prison-operated-bycorecivic-blasted-ongoing-problems-new-state-audit/858884001/); Keith Sharon and Adam Tamburin, "'This is unreal': Family seeks answers in death of Trousdale Turner prison inmate," *The Tennessean* (Feb. 2, 2021) (https://www.tennessean.com/story/news/2021/02/03/trousdale-turner-inmate-aaron-blaykeadams-dead-family-wants-answers/4290646001/); Alex Corradetti, "Investigation underway following death of inmate at Trousdale Turner Correctional Center," WKRN (Sep. 8, 2021), (https://www.wkrn.com/news/investigation-underway-following-death-of-inmate-at-trousdale-turnercorrectional-center/); Chris Gregory, "Former Trousdale Turner corrections officer indicted," *Lebanon Democrat* (Oct. 7, 2021) (https://www.lebanondemocrat.com/hartsville/former-trousdale-turnercorrections-officer-indicted/article_aac20d8d-16e5-5edc-9e7e-d5fd9f8bfd0e.html); Levi Ismail, "NAACP calls for closure of Trousdale Turner Correctional Center, cites 'barbaric treatment' of Black men," WTVF (Nov. 11, 2021) (https://www.newschannel5.com/news/naacp-calls-for-closure-of-trousdale-turnercorrectional-center-cites-barbaric-treatment-of-black-men).

("*CCA*"), Case No. 3:16-cv-2267 (M.D. Tenn.), the shareholder lawsuit mentioned above. Shareholders alleged that CoreCivic had failed to provide adequate medical care to inmates, *CCA*, 330 F.R.D. 481 (M.D. Tenn. 2019), and the company settled the case shortly in 2021. *CCA*, 2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021). Diabetic inmates reported that they were being denied insulin in order to maximize profits. *See* Brett Kelman, "At Tennessee's largest prison, diabetic inmates say they are denied insulin to 'maximize profits'," *The Tennessean* (Aug. 7, 2018) (https://www.tennessean.com/story/news/2018/08/07/corecivic-diabetic-inmates-denied-insulintrousdale-turner/925297002/).

44. Defendants CoreCivic, Inc. and CoreCivic of Tennessee each have adopted a policy of withholding medical care from inmates in order to maximize profits. That policy contributed to the Plaintiff's suffering.

45. As executives at CoreCivic, Defendants Hininger, Swindle, Medlin, and Ivens knew about persistently inadequate medical care at company facilities, and they had every opportunity to improve medical care at HCCF. Instead, they kept providing inadequate medical care in order to maximize profits. Likewise, they continued to understaff prisons (including HCCF) in order to maximize profits.

**Claims**

**Count 1: Civil Rights Violations**

46. All prior paragraphs are incorporated herein by reference.

47. Mr. Lanier bring claims against all Defendants under 42 U.S.C. §1983 for Eighth Amendment violations, namely for deliberate indifference to his health and safety.

48. Mr. Lanier brings claims for denial of his due process rights against Defendants Hall, Wardlow, Morton, and Carter, namely because of the sham disciplinary proceeding that

wrongfully kept him in "close supervision" and effectively denied him parole.

49. Mr. Lanier also brings claims for First Amendment retaliation, specifically because Defendants Hall, Wardlow, Ivens, and Rodela have retaliated against him for filing grievances and hiring counsel. Defendants Ivens and Rodela withheld proper medical care, and Defendants Hall and Wardlow improperly kept him in disciplinary segregation.

## Count 2: Medical malpractice

50. All prior paragraphs are incorporated herein by reference.

51. Mr. Lanier brings claims against the CoreCivic entities and Defendants Ivens and Rodela for medical malpractice.

## Count 3: Gross Negligence

52. All prior paragraphs are incorporated herein by reference.

53. Mr. Lanier brings claims against the CoreCivic entities as well as Defendants Hininger, Swindle, Medlin, Vantell, Hall, Wardlow, Morton and Carter for gross negligence.

## Count 5: Negligence

54. All prior paragraphs are incorporated herein by reference.

55. The Plaintiff brings claims against the CoreCivic entities as well as Defendants Hininger, Swindle, Medlin, and Vantell, Wardlow, Morton and Carter for negligence.

### Request for Relief

62. Mr. Lanier respectfully prays that upon a final hearing of this case, judgment be entered for them against the Defendants, for actual and punitive damages together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate; costs of court; attorney fees; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

63. Mr. Lanier also seeks injunctive relief. Specifically, he asks the Court to (1) order him transferred to Lois M. Deberry Special Needs Facility, where he can receive adequate medical care (in the alternative, he asks the Court to order the Defendants to provide him with adequate medical care); (2) order the Defendants to vacate the results of the sham disciplinary proceeding; and (3) order the Defendants to remove all of the dangerous pipe from HCCF.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

**/s/ Janet H. Goode**
Janet H. Goode
Tennessee BPR No. 035872
917 S. Cooper Street
Memphis, Tennessee 38104
(901) 308-7511
(901) 641-3972 (fax)
*janet@janetgoodelaw.com*

**/s/ Ty Clevenger**
Ty Clevenger, *pro hac vice*
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorneys for Plaintiff**